**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| TRICIA H.,[1] | : | Case No. 2:23-cv-02090 |
| | : | |
| Plaintiff, | : | District Judge James L. Graham |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[2]

---

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in September 2019. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not under a "disability" as defined in the Social Security Act prior to October 10, 2020 but became disabled on that date. After the Appeals Council denied Plaintiff's request for review, Plaintiff filed an action with this Court.[3] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g), pursuant to a joint stipulation by the parties. The Appeals Council

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

[3] Assigned to District Judge Michael H. Watson, Case Number 2:21-cv-05048.

remanded the case pursuant to the District Court's order. The same ALJ held another hearing and again concluded that Plaintiff was disabled until October 10, 2020. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the partially favorable decision. For the reasons set forth below, it is recommended that the Court REVERSE the Commissioner's decision and REMAND for further proceedings.

## I.     BACKGROUND

Plaintiff asserts that she has been under a disability since July 20, 2016. At that time, she was forty-five years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[4] On October 10, 2020, she changed age category to a "person closely approaching advanced age." *See* 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No.  7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-12 at PageID 2315-41), Plaintiff's Statement of Errors ("SE," Doc. No. 10), and the Commissioner's Memorandum in Opposition

---

[4] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

("Mem. In Opp.," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the

3

agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

4

## III.     FACTS

### A.     The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:       Plaintiff has not engaged in substantial gainful activity since July 20, 2016, the alleged onset date.

Step 2:       She has the severe impairments of degenerative disc disease of the lumbar spine status post lumbar laminectomy and fusion; likely fibromyalgia (versus lupus); bipolar disorder; posttraumatic stress disorder (PTSD), and anxiety.

Step 3:       She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:       Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R § 404.1567(a), subject to the following limitations: "[S]he can never climb ladders, ropes[,] or scaffolds; can occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity, and excessive vibration; must avoid all exposure to any hazards such as dangerous moving machinery and unprotected heights; must be afforded the opportunity for brief[,] one[-] to two[-] minute changes of position at intervals not to exceed 30 minutes without being off task; is capable of frequent fingering, handling, and reaching in all directions with bilateral upper extremities; is capable of work in a low-stress job, defined as having only occasional changes in the work setting and no fast-paced production quotas such as fast-paced assembly line work or high-volume piecemeal quotas; [and] is capable of no interaction with the general public and occasional interaction with co-workers

5

and supervisors such that she is capable of working with things rather than with people."

She is unable to perform any of her past relevant work.

Step 5:     Prior to October 10, 2020, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed.

Since October 10, 2020, there have been no jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Decision, Doc. No. 7 at PageID 2321-32.) These findings led the ALJ to conclude that for the purposes of Plaintiff's application for Disability Insurance Benefits, Plaintiff was not disabled at any time through the date last insured of December 31, 2019. (*Id.* at PageID 2332.) As for Plaintiff's Supplemental Security Income application, the ALJ concluded that Plaintiff became disabled on October 10, 2020. (*Id.*)

## B.      Treating Physicians

### 1.      *Jonathan Belding, M.D.*

Dr. Belding saw Plaintiff in follow-up for her second lumbar spine surgery on November 28, 2018. (AR, Doc. No. 7-10 at PageID 1823.) According to Dr. Belding, Plaintiff reported that she was doing well but that her back was "still pretty miserable." (*Id.*) Nevertheless, Dr. Belding noted: "I do not have any restrictions on her. I think she will continue to do well." (*Id.*) Dr. Belding instructed Plaintiff to continue to take prescribed pain medications and to follow up again in four weeks. (*Id.*)

Dr. Belding subsequently completed an Orthopedic Specialist Medical Statement in October 2020. (AR, Doc. No. 7-11 at PageID 2307-08.) Dr. Belding listed diagnoses of

a synovial cyst, cervical radiculopathy, and lumbar radiculopathy, as well as symptoms of "neck pain with radiation." (*Id.* at PageID 2307.) When asked to identify the clinical findings and objective signs that supported the severity of Plaintiff's symptoms and his opinions, Dr. Belding wrote: "MRI cervical performed." (*Id.*) Dr. Belding checked boxes to indicate his opinion that Plaintiff could sit, stand, and walk for approximately two hours each in an eight-hour workday. (*Id.*) He opined that Plaintiff would need to take unscheduled breaks approximately every hour during a workday, and that Plaintiff would need to rest for twenty to twenty-five minutes at a time. (*Id.*) Dr. Belding indicated that muscle weakness, pain, paresthesia, and numbness caused Plaintiff's need for breaks. (*Id.*) Dr. Belding also opined that Plaintiff needed a cane or other hand-held assistive device for occasional standing and walking, which he attributed to Plaintiff's imbalance and foot numbness. (*Id.*)

Additionally, Dr. Belding indicated that Plaintiff could rarely lift and carry ten pounds and could occasionally lift or carry less than ten pounds. (*Id.* at PageID 2308.) He indicated that she could never lift or carry more than ten pounds. (*Id.*) Dr. Belding opined that Plaintiff could use her arms to reach in front of her body and could use her hands for grasping, turning, and twisting objects for less than fifty percent of the time during an eight-hour workday. (*Id.*) He opined that she could use her fingers for fine manipulation and her arms for overhead reaching for less than twenty-five percent of the time. (*Id.*) According to Dr. Belding, Plaintiff would be "off task" (defined as symptoms severe enough to interfere with the attention and concentration needed to perform even simple work tasks) for twenty-five percent or more of the workday, and she would likely be

7

absent from work for more than four days each month. (*Id.*) Dr. Belding also indicated that Plaintiff's impairments were "reasonably consistent" with the symptoms and limitations that he described in the form. (*Id.*)

### 2. *Michael Harrington, M.D.*

Dr. Harrington completed a Palliative Care Specialist Medical Statement form in November 2020. (AR, Doc. No. 7-11 at PageID 2310-11.) Dr. Harrington listed diagnoses of muscular dystrophy, autoimmune arthritis, and fibromyalgia. (*Id.* at PageID 2310.) He listed symptoms of joint pain, stiffness, low back pain, and radiculopathy due to lumbar spine surgery. (*Id.*) Dr. Harrington indicated that Plaintiff could sit for at least six hours in an eight-hour workday but could stand and walk for less than a total of two hours. (*Id.*) He opined that Plaintiff would need to take unscheduled breaks, each lasting for five to ten minutes, every thirty to sixty minutes. (*Id.*) Dr. Harrington attributed the need for breaks to muscle weakness, pain, paresthesia, and numbness. (*Id.*) He indicated no need for a cane or hand-held assistive device. (*Id.*) Dr. Harrington opined that Plaintiff could rarely lift and carry up to twenty pounds and could occasionally lift and carry ten pounds. (*Id.* at PageID 2311.) According to Dr. Harrington, Plaintiff's impairments were likely to produce "good days" and "bad days." (*Id.*) Dr. Harrington further opined that Plaintiff was likely to be "off task" for ten percent of a typical workday, and she would likely be absent from work approximately two days per month. (*Id.*) Dr. Harrington indicated that the symptoms and limitations that he assessed began on January 1, 2020. (*Id.*)

### 3. *The ALJ's evaluation of the treating physicians' opinions.*

The ALJ combined her analyses of Dr. Belding's and Dr. Harrington's opinions and afforded them "partial weight." (Decision, Doc. No. 7-12 at PageID 2329.) The ALJ reasoned that the opinions were "somewhat contradictory given the medical evidence discussed above." (*Id.*) The ALJ further explained: "Nevertheless, the undersigned appreciates Dr. Belding and Dr. Harrington's treating relationships with [Plaintiff] and finds their progress notes useful to the ultimate conclusion of disability." (*Id.*)

### D. State Agency Psychological Consultants

Cynthia Waggoner, Psy.D. reviewed the record and completed a Disability Determination Explanation form in January 2020. (AR, Doc. No. 7-3 at PageID 311-12, 317-19.) Dr. Waggoner found moderate impairment in the following "B Criteria" areas: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at PageID 311.) She found no impairment in the area of understanding, remembering, or applying information. (*Id.*) In the mental RFC section of the form, Dr. Waggoner indicated that Plaintiff was moderately limited in the abilities of carrying out detained instructions, maintaining attention and concentration for extended periods, and working in coordination with or in proximity to others without being distracted by them. (*Id.* at PageID 317-18.) Dr. Waggoner otherwise found no significant limitations in the other areas of functioning that related to sustained concentration and persistence. (*Id.*) She concluded: "[Plaintiff] displayed limitations in [concentration, persistence, and pace] at exam. [Plaintiff is] [c]apable of completing simple [two- to

three-]step tasks that do not require a fast pace or high production quotas." (*Id.* at PageID 318.)

Regarding social interactions, Dr. Waggoner opined that Plaintiff was moderately limited in the abilities of interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR, Doc. No. 7-3 at PageID 318.) Dr. Waggoner opined: "[Plaintiff] has limited social contact and agoraphobia. [She is] [l]imited to superficial contact from the general public, coworkers, and supervisors." (*Id.*)

In the final area of adaptation, Dr. Waggoner opined that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting. (AR, Doc. No. 7-3 at PageID 318). She referred to "[p]oor stress tolerance and panic attacks" and concluded that Plaintiff was "[c]apable of working in a static/routine environment." (*Id.* at PageID 318-19.)

Kristin Haskins, Psy.D. reviewed the updated record at the reconsideration level in May 2020. (AR, Doc. No. 7-3 at PageID 347, 350-51.) Dr. Haskins affirmed Dr. Waggoner's assessment regarding the "B criteria" areas of functioning. (*Id.* at PageID 347.) In the mental RFC section, Dr. Haskins opined that Plaintiff was moderately limited in the abilities of maintaining attention and concentration for extended periods, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number

10

and length of rest periods. (*Id.* at PageID 350). Dr. Haskins found no significant limitations in the other areas of functioning that related to sustained concentration and persistence. (*Id.*) She concluded that Plaintiff was "[c]apable of completing short[-]cycle tasks that do not require a fast pace or high production quotas." (*Id.*)

As for social interactions, Dr. Haskins affirmed Dr. Waggoner's assessment. (*Id.* at PageID 351.) In the final area of adaptation, Dr. Haskins essentially affirmed Dr. Waggoner's assessment and opined that Plaintiff was capable of working in a static or routine work environment, but she further restricted Plaintiff to no stringent time or production demands. (*Id.*)

The ALJ combined her analyses of the state agency medical and psychological consultants' assessments. (Decision, Doc. No. 7-12 at PageID 2328.) She concluded that the consultants' assessments were "partially persuasive." (Decision, Doc. No. 7-12 at PageID 2328.) The ALJ reasoned that their findings were "only somewhat consistent with the totality of the evidence." (*Id.*) The ALJ acknowledged that the consultants had "significant program knowledge." (*Id.*) But the ALJ explained that she had "also fully considered [Plaintiff's] updated treatment records, the amount of time that has passed since the State agency consultants provided their opinions, and [Plaintiff's] allegations and testimony" to conclude that Plaintiff "would have some additional, and more restrictive, limitations from both a physical and mental standpoint that were not contemplated by the State agency consultants . . . ." (*Id.*)

The ALJ then addressed the psychological consultants' opinion that Plaintiff was limited to "superficial contact from the general public, coworkers, and supervisors."

11

(Decision, Doc. No. 7-12 at PageID 2328-29.) The ALJ noted that the consultants "do not define what they mean by superficial contact." (*Id.* at PageID 2329.) The ALJ also noted that the RFC limitation for no interaction with the general public was more restrictive than the consultants' proposed limitation on public interaction. (*Id.*) As for interactions with coworkers and supervisors, the ALJ explained that the RFC limitation (for "occasional interaction with coworkers and supervisors such that she is capable of working with things rather than people") served to "limi[t] [Plaintiff] from jobs that focus on personal interaction as opposed to dealing with physical objects." (*Id.*) The ALJ concluded: "While the State agency opinions and the [RFC] are not exactly the same, they both limit [Plaintiff's] contact and interaction with others while working and are at least partially consistent with each other." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts two errors: 1) the ALJ's analysis of the opinions of Drs. Belding and Harrington violated 20 C.F.R. § 404.1520c; and 2) the RFC does not accurately account for the state agency psychological consultants' limitation for superficial interaction with others. (SE, Doc. No. 10 at PageID 2801, 2807.) For the reasons discussed below, Plaintiff's first asserted error is well taken and the ALJ's decision should be reversed.

### A.    Applicable Law.

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her]

12

impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar.

13

20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from ***other*** providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the

same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024 U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[5] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id.*

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022)

---

[5] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

(Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

Additionally, the ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022 U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *affirmed by* 2022 U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS 140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 249 (6th Cir. 2007)). Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249.

**B.    The ALJ Reversibly Erred In Her Evaluation Of The Opinions Of Plaintiff's Treating Physicians.**

*1.    The ALJ failed to consider supportability pursuant to the applicable regulations.*

The ALJ was required to explain her analysis of the supportability and consistency factors when considering the persuasiveness of the opinions of Drs. Belding and Harrington. 20 C.F.R. § 404.1520c(b)(2). However, the ALJ appeared to conflate these requirements and did not address the supportability factor. The Court therefore concludes that the ALJ did not comply with Section 404.1520c(b)(2).

As discussed above, the ALJ assigned only "partial weight" to the opinions of Drs. Belding and Harrington. (Decision, Doc. No. 7-12 at PageID 2329.) As an initial matter, because Plaintiff filed her claim after March 27, 2017, the Social Security Administration's new regulations for evaluating medical opinion evidence apply. And so the ALJ must not assign weight to any medical opinions but instead must evaluate the persuasiveness of each medical opinion in the record. 20 C.F.R. § 1520c(a)-(b). Plaintiff asserts that the ALJ erred because she "did not evaluate the opinions for their persuasiveness and instead referred to the outdated and inapplicable standards outlined in 20 C.F.R. § 404.1527." (SE, Doc. No. 10 at PageID 2801 n.1.)

This contention is not well-taken. The ALJ's failure to specifically address the persuasiveness of the treating physicians' opinions appears to constitute a typographical error, but it is a harmless error. Courts in the Sixth Circuit have held that a typographical

17

or scrivener's error is harmless when the ALJ's meaning is clear in context. *Calkins v. Sec'y of Health & Hum. Servs.,* No. 85-5685, 1986 WL 17083, *2 (6th Cir. May 7, 1986) (holding that the district court properly "examined the opinion as a whole to interpret the true meaning of the ALJ's findings" and was not required to "ignore the real finding of the ALJ and instead blindly follow the transcriber's version of the finding."); *Barnes v. Comm'r of Soc. Sec.,* No. 16-13714, 2018 WL 1474693 (E.D. Mich. Mar. 6, 2018) (finding that scrivener's errors were harmless because "the ALJ's true meaning is easily discernible for the analysis on each topic"); *Gomez v. Berryhill,* No. 3:18-cv-11738, 2019 WL 5680841, at *5 (E.D. Mich. June 11, 2019) (a typographical error did not require remand because context showed the ALJ's actual meaning).

In this case, the ALJ's intended meaning is clear. The ALJ correctly cited the applicable legal standard for evaluating the medical opinion evidence when determining the RFC: "The undersigned has also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (Decision, Doc. No. 7-12 at PageID 2325.) In the medical evidence summary section, the ALJ summarized the opinion of the consultative physician and concluded that it was "partially persuasive." (*Id.* at PageID 2327.) Then, in the opinion evidence analysis section, the ALJ summarized the opinions and findings of the state agency medical and psychological consultants and found that they were "partially persuasive." (*Id.* at PageID 2328.) The ALJ began her evaluation of the treating physicians' opinions in a subsequent paragraph by summarizing the opinions. (*Id.* at PageID 2329.) The ALJ stated that she gave the opinions "partial weight," and she

18

explained that the opinions were "somewhat contradictory" with the medical evidence. (*Id.*) She also acknowledged the doctors' treating relationships with Plaintiff. (*Id.*)

Because the ALJ found that the opinions were somewhat contradictory with the other evidence of record and did not fully adopt the opinions, the undersigned finds that a reasonable interpretation is that the ALJ found the doctors' opinions were partially ***persuasive*** pursuant to 20 C.F.R. § 404.1520c. The ALJ's intended meaning is clear from the ALJ's analysis, and so ALJ's error is harmless.

Nevertheless, the ALJ also erred by failing to address the required supportability factor, and this is ***not*** a harmless error. At most, the ALJ's discussion addresses the consistency factor, which requires ALJs to consider "the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520c(c)(2). The supportability factor, by contrast, requires ALJs to examine "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 404.1520c(c)(1). The ALJ summarily concluded that the medical evidence that she had "discussed above" in the decision was "somewhat contradictory" with the opinions of Drs. Belding and Harrington. (Decision, Doc. No. 7-12 at PageID 2329.) She stated this conclusion without explaining how she considered objective medical evidence and supporting explanations cited and provided by these physicians.

Defendant argues that the ALJ did not err because the ALJ "properly applied" the revised regulations for evaluating medical evidence. (Mem. In Opp., Doc. No. 11 at PageID 2815.) Defendant asserts that the ALJ need not specifically use the terms "supportability" or "consistency" when addressing these factors. (*Id.* (citing *Hardy v.*

19

*Comm'r of Soc. Sec.*, No. 2:20-cv-4097, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021) (Graham, D.J.); *Kraig v. Kijakazi*, No. 1:21CV1253, 2022 WL 4232692, at *8 (N.D. Ohio Sept. 14, 2022); *Cormany v. Comm'r of Soc. Sec.*, No. 5:21-cv-933, 2022 WL 2611952, at *7 (N.D. Ohio May 20, 2022); *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)).) According to Defendant, the ALJ demonstrated that she considered the supportability factor because she noted "that she reviewed their treatment notes in forming the RFC" and because many of the treatment notes that the ALJ cited in her medical evidence summary were from Drs. Belding and Harrington. (Mem. In. Opp., Doc. No. 11 at PageID 2819.) Additionally, the ALJ's "reasoning can be traced in her decision." (*Id.* at PageID 2820.)

Defendant's assertions are not well-taken. The Court agrees that ALJs do not err merely by omitting the terms "supportability" and "consistency" from their decision, and that reviewing courts must review the ALJ's explanation of what she actually considered. The Court has conducted that review and, for the reasons stated above, concludes that the ALJ did not actually explain her consideration of the supportability factor, as the regulations required her to do.

Defendant essentially argues that even if the ALJ erred in this respect, the error is harmless because the ALJ's conclusions are supported by substantial evidence. (Mem. In Opp., Doc. No. 11 at PageID 2816-17.) The Court disagrees. Absent a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot determine that the ALJ's analysis of the treating physicians' opinions is supported by substantial evidence. See *Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-cv-617, 2022 WL

130761, at \*8 (S.D. Ohio Jan. 14, 2022) (Litkovitz, M.J.) (citing *Ephraim v. Saul*, No. 1:20cv00633, 2021 WL 327755, at \*7 (N.D. Ohio Jan. 8, 2021), *report and recommendation adopted sub nom. Ephraim v. Comm'r of Soc. Sec.*, No. 1:20cv633, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021) ("[A] district court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'")). See also *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at \*8 (N.D. Ohio June 3, 2021) (citing *Blakley*, 581 F.3d at 409) (The ALJ's error requires remand because "without fuller explanation, this [C]ourt cannot engage in meaningful review of the ALJ's decision."). Accordingly, the ALJ's failure to properly analyze the treating physicians' opinions pursuant to 20 C.F.R. § 404.1520c constitutes reversible error because it prejudiced Plaintiff on the merits.

Finally, Defendant cites to two recent Sixth Circuit decisions to support its argument that if substantial evidence supports the ALJ's conclusion that a medical opinion was unpersuasive, "any arguments as to evidence supporting other conclusions the ALJ could have made 'are a veiled attempt to have [the Court] reweigh the evidence,' which the Court may not do." (Mem. In Opp., Doc. No. 11 at PageID 2817 (citing *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at \*2 (6th Cir. Dec. 1, 2022); *Pettit v. Comm'r of Soc. Sec.*, No. 22-3826, 2023 WL 3200582, at \*2 (6th Cir. May 2, 2023)).) Both cases are distinguishable.

The *Nasser* ALJ discounted a treating physician's opinion on the basis that it was inconsistent with the physician's prior treatment records. 2022 WL 17348838, at \*2. The

21

plaintiff argued that the ALJ applied 20 C.F.R. § 404.1520c incorrectly—not because the ALJ failed to address supportability or consistency, but because several factors supported the physician's opinion, namely: "[H]e was the physician with the closest relationship to [the plaintiff], his opinion was submitted under oath, and [the opinions of two other doctors] were inconsistent with other parts of the record." *Id.* The court rejected the plaintiff's arguments as "a veiled attempt to have us reweigh the evidence." *Id.* The court concluded that the ALJ "discussed all material aspects of Dr. Policherla's opinion and complied with § 1520c" and that substantial evidence supported his determination. *Id.*

Similarly, the ALJ in *Pettit* discounted a treating neurologist's opinion because it was unsupported by the neurologist's own records and was inconsistent with other evidence in the record. 2023 WL 3200582, at *2. The plaintiff argued that the ALJ applied 20 C.F.R. § 404.1520c incorrectly but conceded that the ALJ "engaged in a supportability and consistency discussion, as required by 20 C.F.R. § 404.1520c(a)." *Id.* The court concluded: "To the extent that Pettit's argument merely reframes her earlier argument that the ALJ's decision was superficial and lacked support in the record, we have already rejected that assertion." *Id.* (citing *Nasser*, 2022 WL 17348838, at *2).

Here, unlike in *Nasser* and *Pettit*, Plaintiff has not asked the Court to reweigh the evidence. Instead, Plaintiff has argued that the ALJ failed to follow the regulatory requirement to evaluate the treating physicians' opinions for supportability and consistency, and to explain her consideration of those factors. (*See* SSE, Doc. No. 10 at PageID 2801-07.) For the reasons discussed above, this Court agrees that the ALJ failed

22

to follow the regulatory requirement to evaluate the treating physicians' opinions for supportability. The failure to comply with a legal requirement constitutes reversible error.

        **2.**       ***The ALJ's consistency analysis is not supported by substantial evidence.***

The ALJ explained that she was only partially persuaded by the opinions of Drs. Belding and Harrington because they were "somewhat contradictory given the medical evidence discussed above." Thus, the ALJ arguably explained her consideration of the consistency factor as required by 20 C.F.R. § 404.1520c(c)(2). However, the ALJ's consistency analysis is itself not supported by substantial evidence. Although the ALJ supported her conclusion that the opinions of Drs. Belding and Harrington were "somewhat contradictory" by citing "the medical evidence discussed above," (Decision, Doc. No. 7-12 at PageID 2329), the ALJ's discussion of the medical evidence shows that she relied only on more recent medical evidence when evaluating the opinions of Plaintiff's treating doctors.

The ALJ provided a summary of the medical evidence during the relevant time period in connection with formulating the RFC. Significantly, the ALJ initially summed up the evidence related to Plaintiff's physical impairments: "While the evidence demonstrates several severe physical impairments, the impairments improved greatly with treatment." (Decision, Doc. No. 7-12 at PageID 2326.) The ALJ then summarized the objective evidence that was dated from the July 20, 2016 application date through November 2018 in two paragraphs. (Decision, Doc. No. 7-12 at PageID 2326.) She began the summary by stating that although Plaintiff had a history of musculoskeletal pain and

discomfort, the medical records showed "no evidence of any significant findings since the alleged onset date." (*Id.*) But this statement is unsupported by the findings dated through November 2018 that the ALJ cited in the next two paragraphs, as well as other evidence in the medical records, which were significant enough to warrant two lumbar spine surgeries. For example, the ALJ cited lumbar and cervical spine imaging that was taken in August 2016:

> [I]maging from August 2016 showed mild degenerative changes that were stable with asymmetric foraminal and right lateral recess stenosis at L5-S1 due to a diffuse disc bulge and hypertrophic facet arthropathy. At L4-L5 there was mild bilateral facet hypertrophy, and there was also an impingement of the right S1 nerve root. An August 2016 cervical MRI showed mild degenerative changes at C3-C4, C5-C6, and C6-C7 (Exhibit B2A).

(*Id.*)

Next, the ALJ stated that Plaintiff underwent a microdiscectomy and laminectomy at the L5-S1 level in October 2017. (Decision, Doc. No. 7-12 at PageID 2326 (citing AR, Doc. No. 7-8 at PageID 1123).) Follow-up notes from Dr. Harrington indicated that Plaintiff reported only temporary relief after the surgery, and she began reporting significant back pain with radiation to the bilateral gluteal areas in February 2018. (AR, Doc. No. 7-8 at PageID 1248.) An examination at that time showed diffuse lower back pain and tenderness over the lower pelvic brim posteriorly. (*Id.* at PageID 1249.) An examination in April 2018 showed "severely" limited range of motion, antalgia with hip flexion and knee extension, guarding with hamstring extension, positive Faber signs, sacroiliac joint pain, and decreased sensation. (*Id.* at PageID 1246.) Dr. Harrington

reported on several occasions that Plaintiff appeared "in distress" and "ke[pt] shifting off [the] right buttock." (*Id.* at PageID 1239, 1242, 1249; AR, Doc. No. 7-9 at PageID 1646.)

As the ALJ pointed out, a September 2018 lumbar MRI showed multiple cysts adjacent to the right L5-S1 facet that resulted in lateral recess stenosis and compression of the L5 and S1 nerve roots. (Decision, Doc. No. 7-12 at PageID 2326 (citing AR, Doc. No. 7-8 at PageID 1619).) In November 2018, Plaintiff underwent another surgery that included a revision laminectomy, L5-S1 foraminotomies, and lumbar fusion. (Decision, Doc. No. 7-12 at PageID 2326 (citing AR, Doc. No. 7-8 at PageID 1211).) The ALJ then cited Dr. Belding's November 28, 2018 progress note and stated that Plaintiff reported she was "doing pretty well," and that "there were no restrictions placed on [Plaintiff's] activities." (Decision, Doc. No. 7-12 at PageID 2326 (citing AR, Doc. No. 7-10 at PageID 1823).)

Next, the ALJ summarized the objective evidence dated since January 2019, which showed continued improvement in Plaintiff's condition. (Decision, Doc. No. 7-12 at PageID 2326-27.) She described several examinations that showed full range of motion, full strength in the upper and lower extremities, no tenderness, normal sensation, and a normal gait. (*Id.*) The ALJ also cited lumbar spine x-rays that showed no post-surgical hardware failure or advanced spondylosis. (*Id.* at PageID 2326.)

Additionally, when the ALJ evaluated Plaintiff's subjective complaints while formulating the RFC, she relied on evidence of Plaintiff's improved condition to find that those complaints were inconsistent with the overall evidence. (Decision, Doc. No. 7-12 at PageID 2327.) The ALJ explained: "While [Plaintiff] has been diagnosed with several

physical impairments, she has received proper treatment with signs of improvement. Furthermore, based on physical exams showing normal muscle strength/tone, normal gait/stance, and intact sensation (Exhibits B4F; B8F; B14F; B16F), . . . the undersigned has accommodated for her physical limitations by further reducing her to sedentary exertional work with additional non-exertional limitations." (*Id.*) But most of the evidence and the normal examination findings cited by the ALJ describes Plaintiff's condition after November 2018—well over two years after the alleged disability onset date.

The ALJ likewise relied on recent medical evidence in her conclusion of the RFC analysis. (Decision, Doc. No. 7-12 at PageID 2329.) The ALJ emphasized that Plaintiff's condition improved after surgical intervention: "Although [Plaintiff] has a history of treatment, the objective medical evidence reflects mostly mild to moderate clinical findings and conservative treatment of [Plaintiff's] symptoms since her lumbar fusion in 2018." (*Id.*) The ALJ reasoned that because Plaintiff's condition had improved, she did not need to include more restrictive limitations in the RFC. (*Id.*) But this explanation shows that the ALJ based his analysis of the treaters' opinions – and the RFC – upon evidence from the end of the relevant time period. The ALJ did not explain how a sedentary RFC would be reasonable earlier during the first two years after the alleged disability onset date, when Plaintiff underwent and recovered from two spine surgeries. And so the ALJ plainly did not base her conclusions "upon the record in its entirety." *Rogers*, 486 F.3d at 249.

In sum, the ALJ minimized the findings and Plaintiff's treatment prior to November 2018. She then limited her analysis to evidence from the end of the relevant time period. The ALJ therefore plainly did not account for evidence from the entire relevant time period. Accordingly, the ALJ's conclusions about the consistency of the opinions of Drs. Belding and Harrington are not supported by substantial evidence. This is another reason why the ALJ's decision should be reversed.

### C.    The ALJ Did Not Reversibly Err In Evaluating The Findings Of The State Agency Psychological Consultants.

Plaintiff does not allege that the ALJ failed to follow the requirements of 20 C.F.R. § 404.1520c when she evaluated the state agency psychological consultants' prior administrative medical findings. Instead, she claims that the ALJ erred by failing to account for the consultants' limitation to superficial interaction. (SE, Doc. No. 10 at PageID 2807-10.) Plaintiff's contention lacks merit because the ALJ thoroughly discussed Plaintiff's social functioning in the decision. The ALJ adequately explained why she did not adopt the superficial interaction limitation in the RFC, and her conclusions are supported by substantial evidence.

As discussed above, the consultants opined that Plaintiff was limited to "superficial contact from the general public, coworkers, and supervisors." (AR, Doc. No. 7-3 at PageID 318, 351.) The ALJ found the consultants' assessments only "partially persuasive" and reasoned that they were only "somewhat consistent with the totality of the medical evidence." (*Id.* at PageID 2328.) The ALJ then limited Plaintiff to "no interaction with the general public and occasional interaction with co-workers and

supervisors such that she is capable of working with things rather than with people."
(Decision, Doc. No. 7-12 at PageID 2325.)

Plaintiff correctly asserts that the terms "occasional" and "superficial" are not
interchangeable. This Court has routinely recognized that "occasional contact" refers to
the *quantity* of time spent with individuals, while "superficial contact" goes to the *quality*
of the interactions. *See Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL
2200423, at *6 (S.D. Ohio June 1, 2021) (Deavers, M.J.), *report and recommendation
adopted,* No. 2:20-CV-2566, 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, D.J.)
(citing, e.g., *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5
(S.D. Ohio July 9, 2020) (Vascura, M.J.), *report and recommendation adopted sub nom.
Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 4334920 (S.D. Ohio July 28,
2020) (Morrison, D.J.) (reversing and remanding where ALJ explanation was lacking
because "superficial interaction" is a well-recognized, work-related limitation); *Corey v.
Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17,
2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant
weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial'
interactions.'"); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at
*4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.) ("'Occasional contact' goes to the *quantity*
of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the
interactions." (emphasis added) (citation omitted))).

However, because the ALJ found that the consultants' findings were only partially
persuasive, she was not required to adopt their recommended limitations. (*See* Decision,

Doc. No. 7-12 at PageID 2328.) Moreover, even when an ALJ gives great weight to an opinion—which did not happen here—"there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). The ALJ must, however, "explain[n] the basis for the RFC determination." *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315, 2023 U.S. Dist. LEXIS 23150, at *24 (S.D. Ohio Feb. 9, 2023) (Litkovitz, M.J.), *report and recommendation adopted*, No. 2:21-cv-5315, 2023 U.S. Dist. LEXIS 54657 (S.D. Ohio Mar. 29, 2023) (Graham, D.J.) (citation omitted).

The undersigned concludes that the ALJ adequately explained the basis for her RFC finding. The ALJ explained that she did not adopt the superficial limitation because the consultants did not define the term. (*Id.* at PageID 2329.) Indeed, Social Security regulations and rulings do not define superficial contact, and the consultants likewise did not define what they meant by superficial contact in their assessments. (*See* AR, Doc. No. 7-3 at PageID 318, 351.) The ALJ further explained that the additional limitation that Plaintiff was "capable of working with things rather than people" served to "further limi[t] [Plaintiff] from jobs that focus on personal interaction as opposed to dealing with physical objects." (*Id.*) The ALJ concluded: "While the State agency opinions and the residual functional capacity are not exactly the same, they both limit [Plaintiff's] contact and interaction with others while working and are at least partially consistent with each other." (*Id.*)

Additionally, the ALJ's RFC limitations regarding social functioning are supported by substantial evidence. For example, the ALJ found at Step Three that Plaintiff has moderate limitation in the "B criteria" area of interacting with others. (Decision, Doc. No. 7-12 at PageID 2324.) The ALJ acknowledged Plaintiff's subjective complaints of symptoms related to depression, PTSD, and anxiety. (*Id.* at PageID 2323.) The ALJ cited to the opinion of the consultative psychologist who opined that Plaintiff was "significantly impaired" in the ability to respond appropriately to supervisors and coworkers. (*Id.* at PageID 2324.) The ALJ balanced this evidence with normal mental status findings that included clear speech and no thought abnormalities, as well as providers' reports that Plaintiff established a good rapport, presented as cooperative and with good hygiene and grooming, and had good interactions with medical staff. (*Id.*) The ALJ also cited evidence that documented Plaintiff's abilities in this area, such as Plaintiff's testimony that she regularly spent time with time with family and went shopping approximately once per week, and records that showed "no problems getting along with medical providers and staff and no problems with temper control." (*Id.*)

The ALJ also provided a detailed summary of Plaintiff's medical records related to her mental impairments in the RFC analysis. (Decision, Doc. No. 7-12 at PageID 2327-28.) Here, the ALJ initially noted that Plaintiff's treatment for her mental health symptoms generally included "little more than a conservative regimen of psychotropic medication and no evidence of any significant psychotherapy." (*Id.* at PageID 2326.) The ALJ then summarized the evidence and explained that examination records from Plaintiff's physicians and other treating sources had "essentially shown normal mental

functioning with no significant restrictions from a mental health standpoint since the alleged onset date." (*Id.* at PageID 2327.) The ALJ acknowledged several abnormal objective examination findings including a depressed and anxious mood. (*Id.* at PageID 2327-28.) The ALJ compared these findings to other normal findings that included pleasant and cooperative behavior, an appropriate affect, goal-directed thought processes, and no difficulties with expressive or receptive language. (*Id.*) The ALJ also cited Plaintiff's reported daily activities, which included spending time with her friends and family, preparing simple meals, and doing some housework. (*Id.*) The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity. (*Id.* at PageID 2325.)

Moreover, the ALJ's limitation of Plaintiff to no interaction with the general public (Decision, Doc. No. 7-12 at PageID 2325) is more restrictive than—and thus more than adequately accounts for—the consultants' assessment that Plaintiff is limited to superficial interaction with the general public.

The fact that the ALJ rejected the superficial interaction limitation suggested by the consultants—and adequately explained why she included a different limitation in the RFC to account for Plaintiff's social impairment—is not an error. "The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); citing 20 C.F.R. § 404.1546(c). An ALJ is required to consider prior administrative findings when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *See Poe*, 342 F. App'x at 156-57 (6th Cir. 2009); *Reeves v. Comm'r of Soc. Sec.,* 618 F. App'x 267, 275 (6th Cir.

31

2015). The ALJ's explanation shows that she considered whether Plaintiff required a limitation to superficial social interaction, and her conclusions are supported by substantial evidence. *See* 20 C.F.R. § 404.1520c. The ALJ's decision to include a different limitation to account for Plaintiff's moderate impairment in social functioning is within the permissible "zone of choice" – and because the ALJ's findings are supported by substantial evidence they must be affirmed. *Mullen,* 800 F.2d at 545.

## V.    CONCLUSION

In summary, although Plaintiff's second assertion of error is without merit, the ALJ reversibly erred in her analysis of the treating physicians' opinions. Plaintiff's first assertion of error is therefore well-taken, and the undersigned Magistrate Judge recommends that the ALJ's decision be reversed and remanded.

## VI.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is

32

lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the medical opinion evidence, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted for the entire time period since the alleged onset date.

**IT IS THEREFORE RECOMMENDED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 10) be GRANTED;

2.  The Court REVERSE the Commissioner's non-disability determination;

3.  No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.  This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.  This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).